**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

LIBERTY MUTUAL FIRE
INSURANCE COMPANY,

      Plaintiff,

v.

KB HOME INC., KB HOME RALEIGH-
DURHAM INC., and STOCK BUILDING
SUPPLY, LLC,

      Defendants.

**Civil Action No. 1:13-cv-727
(LO-IDD)**

**<u>DEFENDANTS KB HOME AND KB HOME RALEIGH-DURHAM INC.'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS, OR IN
THE ALTERNATIVE, TO TRANSFER VENUE</u>**

Defendants KB HOME ("KB") (erroneously sued as "KB HOME, Inc.") and KB HOME

Raleigh-Durham Inc. ("KB Raleigh")(collectively hereinafter "KB Defendants"), pursuant to

Rules 12(b)(1), 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. §§

1406 and 1404, respectfully move this Court for a dismissal of this action or, alternatively, a

transfer of venue to either the United States District Court for the Eastern District of North

Carolina or the United States District Court for the Central District of California.[1]

As will be discussed in full below, this case should be dismissed because this Court does

not have subject matter jurisdiction over this suit nor personal jurisdiction over either of the KB

Defendants. Moreover, this venue is improper. Not only do the KB Defendants have no

---

[1] In the event that the KB Defendants' motion is denied in its entirety, then the KB Defendants respectfully reserve the right to file a 12(b)(6) motion attacking the underlying merits of Liberty Mutual Fire Insurance's Complaint.

meaningful ties to Virginia, but all of the events in question in this insurance coverage dispute, including the underlying construction projects, the delivery of the relevant insurance policies to KB Raleigh and KB, and previous coverage litigation between KB Raleigh and Liberty, all took place in either North Carolina or California. Because Virginia has no relationship to this dispute and North Carolina is the locus of the entire dispute between the parties, this action should be dismissed pursuant to Rules 12 (b)(1), 12(b)(2), 12(b)(3), and § 28 U.S.C. 1406.

In the alternative, if this Court determines that dismissal is not proper, North Carolina offers the most efficient and fair forum in which to resolve the underlying issues of this dispute, and this action should be transferred to the United States District Court for the Eastern District of North Carolina under the analysis provided by § 1404. Alternatively, the KB Defendants respectfully request that this matter be transferred to the District Court for the Central District of California.

## RELEVANT FACTS

KB Raleigh is a Delaware corporation with a principal place of business located in Raleigh, North Carolina. (Cope Aff. ¶ 4 ). KB is a Delaware corporation with its principal place of business located in Los Angeles, California. (Cope Aff. ¶ 4). Neither KB Defendant maintains an office in Virginia, is registered with the Virginia Secretary of State, or regularly conducts business in Virginia. (Cope Aff. ¶ 5). Stock Building Supply, LLC ("Stock") is a North Carolina limited liability company whose members and their citizenships are unidentified in Liberty's Complaint. (Compl. ¶ 7). Stock has a principal place of business located in Raleigh, North Carolina. (Cope Aff. ¶ 6). Liberty is the insurer for Stock and is a Massachusetts corporation with its principal place of business located in Boston, Massachusetts. (Compl. ¶ 4). The adjuster

assigned by Liberty to the KB Defendants has a business address in the Los Angeles, California area. (Cope Aff. ¶ 18).

KB Raleigh and Stock have a long-standing business relationship whereby Stock serves as a subcontractor to KB Raleigh and provides materials and labor for various construction projects located in North Carolina. (Cope Aff. ¶ 6). The subcontract agreements between Stock and KB Raleigh were negotiated in North Carolina and California. (Cope Aff. ¶ 6). Upon information and belief, Liberty issued two commercial general liability policies (RG2-C51-004344-035 and RG2-C51-044344-036) to Stock and Ferguson Enterprises, Inc. ("Ferguson") in or about August 2005 and August 2006 (collectively "Stock Policies").[2] (Cope Aff. ¶ 7). The Stock Policies name both KB and KB Raleigh as additional insureds. (Cope Aff. ¶ 7). Relevant portions of the Stock Policies are attached as Exhibit 1 to the Cope Affidavit. The Stock Policies were delivered to KB Raleigh in Raleigh, North Carolina, and KB in Los Angeles, California. (Cope Aff. ¶ 8). KB and KB Raleigh did not have any dealings with Ferguson with respect to Stock's scope of work or the Stock Policies. (Cope Aff. ¶ 9). The Stock Policies list Raleigh, North Carolina addresses for both Stock and Ferguson. (Cope Aff. ¶ 8, Ex. 1 pp. 11-13). Also, it appears from the Commercial General Liability Declarations page that at least one of the Stock Policies was issued to Ferguson and Stock from Liberty's Charlotte, North Carolina sales office. (Cope Aff. ¶ 8, Ex. 1 pp. 11-13).

---

[2] While unclear, it is believed that Ferguson was Stock's parent company at the time the Stock Policies were issued. At best, Liberty boldly argues that the policies at issue were delivered to Ferguson, a non-party to this matter. If delivery to Ferguson is such a key issue, why was Ferguson, a named insured, not included as a party to this suit?

On December 14, 2008, several homeowners in Wake County, North Carolina, filed a class action lawsuit against KB Raleigh and KB HOME North Carolina Inc.[3] in Wake County, North Carolina, (*Mark Elliott, et al. v. KB HOME North Carolina Inc. and KB HOME Raleigh-Durham Inc.*, Wake County Superior Court, Case No. 08-CVS-21190) alleging causes of action for breach of contract, breach of express and implied warranties, negligence, negligence per se, negligent misrepresentation, and unfair and deceptive trade practices arising from a home development located in Cary, North Carolina ("Underlying Class Action"). (Cope Aff. ¶ 10). In essence, the named plaintiffs (who represent a class of approximately 277 homes) base their causes of action on the fact that a weather resistant barrier was not installed under the exterior siding that was provided and installed by Stock and its subcontractors. (Cope Aff. ¶ 11). Because the Underlying Class Action arose from Stock's scope of work, KB Raleigh sought defense and indemnity from Stock, and from Liberty as an additional insured under the Stock Policies. (Cope Aff. ¶ 12). Since it had no contractual relationship, KB Raleigh did not tender defense to Ferguson. (Cope Aff. ¶ 12).

Stock refused to defend and indemnify KB Raleigh as provided by the parties' subcontract, and KB Raleigh thereafter named Stock as a third-party defendant in the Underlying Class Action. (Cope Aff. ¶ 13). Liberty also refused to defend and indemnify KB Raleigh in the Underlying Class Action, and, on November 9, 2010, KB Raleigh filed a bad faith lawsuit against Liberty in Wake County, North Carolina Superior Court (*KB HOME Raleigh Durham Inc. v. Liberty Mutual Fire Insurance Company*, 10 CVS-18887), seeking defense and indemnity as an additional insured under the Stock Policies.[4] (Cope Aff. ¶ 14). Liberty later removed the

---

[3] KB HOME North Carolina Inc. was later dismissed as an improper party in the Underlying Class Action and is not a party to this current declaratory action.

[4] KB and Stock were not parties to the North Carolina Declaratory Action.

action to the District Court for the Eastern District of North Carolina (*KB HOME Raleigh-Durham Inc. v. Liberty Mutual Fire Insurance Company,* 5:10-cv-00573-D)("North Carolina Declaratory Action").[5] (Cope Aff. ¶ 15). A copy of KB Raleigh's Complaint in the North Carolina Declaratory Action is attached as Exhibit 2 to the Cope Affidavit. In its Answer to KB Raleigh's Complaint in the North Carolina Declaratory Action, Liberty admitted that both jurisdiction and venue were proper in the District Court for the Eastern District of North Carolina and asserted counterclaims against KB Raleigh for declaratory relief. (Cope Aff. ¶ 15). A copy of Liberty's Answer in the North Carolina Declaratory Action is attached as Exhibit 3 to the Cope Affidavit. Liberty never alleged that venue was improper nor sought to transfer the North Carolina Declaratory Action to Virginia. (Cope Aff. ¶ 15).

Following approximately 15 months of litigation in the Eastern District of North Carolina, KB Raleigh and Liberty entered into a Settlement Agreement and a Defense Cost Agreement ("Settlement and Defense Agreements") on February 28, 2012, whereby Liberty agreed to reimburse KB Raleigh for a portion of its past defense costs and to provide a defense to KB Raleigh in the Underlying Class Action. (Cope Aff. ¶ 16). Copies of the Settlement and Defense Agreements are attached as Exhibit 4 to the Cope Affidavit. The Settlement and Defense Agreements were negotiated with, and delivered to, Liberty's legal counsel (Susan K. Burkhart with Cranfill, Sumner & Hartzog LLP) located in Raleigh, North Carolina. (Cope Aff. ¶ 16). The KB Defendants' California legal counsel also negotiated the Settlement and Defense Agreements with Ms. Burkhart. (Cope Aff. ¶ 16).

Pursuant to the Settlement and Defense Agreements, Liberty agreed to provide a continual defense to the KB Defendants from December 1, 2011, and only reserved the right to

---

[5] Liberty makes no mention of the federal North Carolina Declaratory Action in its June 14, 2013 Complaint.

terminate this obligation upon one of the following events: 1) the resolution of the Underlying

Class Action "by settlement, verdict, or judgment"; or 2) the entry of a declaratory judgment

should the plaintiffs in the Underlying Class Action either "assert a claim for mold damages" or

"amend their complaint to allege damages not covered" by the Stock Policies. (Cope Aff. ¶ 17).

Since execution of the Settlement and Defense Agreements, the plaintiffs in the Underlying

Class Action have not asserted a claim for mold or amended their Complaint. (Cope Aff. ¶ 17).

Following the Settlement and Defense Agreements, KB Raleigh and its counsel (located in both

North Carolina and California) thereafter dealt only with Liberty's representative (Christine

Hassard) who maintains a business address in the Los Angeles, California area, and submitted

monthly invoices directly to this representative. (Cope Aff. ¶ 18). KB Raleigh did not have direct

interactions with any other Liberty representatives located in Virginia or elsewhere. (Cope Aff. ¶

18).

Following the execution of the Settlement and Defense Agreements, Liberty refused to

participate in the scheduling of a good faith mediation involving the Underlying Class Action

participants, and failed to actively participate in ongoing settlement negotiations despite repeated

requests from KB Raleigh and its counsel. (Cope Aff. ¶ 19). Instead Liberty negotiated

resolution with policy funds to several unrelated Stock lawsuits involving Chinese drywall.

(Cope Aff. ¶ 19). Most recently, Liberty has failed to provide definitive evidence of exhaustion

of the Stock Policies, refused to pay KB Raleigh defense costs as previously agreed under the

Settlement and Defense Agreements, and has refused to provide KB Raleigh with a complete set

of loss runs despite demands for such information from May 2013 to present. (Cope Aff. ¶ 19).

Even though Liberty and KB Raleigh previously litigated the issue of insurance coverage

in the Eastern District of North Carolina and Liberty admitted that court was the proper forum,

Liberty now chose to file this action in Virginia on June 14, 2013.[6] Liberty now seeks a declaration that its defense obligations to the KB Defendants are discharged but does not allege that the plaintiffs in the Underlying Class Action have either asserted a claim for mold damages or have amended their complaint to include damages not covered by the Stock Policies -- an express requirement under the terms of the Settlement and Defense Agreements.

Liberty's Complaint also fails to meet the requirements for diversity jurisdiction. First, Liberty fails to assert how the federal amount in controversy requirement is satisfied when the Stock Policy is purportedly exhausted. (Compl. ¶11). Second, although Liberty asserts that the Stock Policy was "issued to and delivered in Virginia, to Ferguson…and Stock Building Supply, LLC," Liberty does not allege any facts in support of this conclusory statement. (Compl. ¶ 11). The addresses within the Stock Policies specifically contradict these assertions. (*See* Ex. 1 pp. 11-13 to Cope Aff.). Liberty similarly seeks to establish venue by asserting that the Stock Policies were "delivered to Ferguson Enterprises, Inc. and Stock Building Supply, LLC in Newport News, Virginia." (Compl. ¶ 12). The Stock Policies, however, were delivered to KB Raleigh in North Carolina and reference Raleigh, North Carolina, addresses for both Ferguson and Stock. (Cope Aff. ¶ 8). Finally, Liberty fails to plead the citizenship of each of Stock's members as required for an LLC. (Compl. ¶¶ 7-8).

The KB Defendants now seek, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(3), as well as 28 U.S.C. § 1406, to dismiss this declaratory action because: 1) Liberty has failed to properly plead diversity subject matter jurisdiction as required by 28 U.S.C.

---

[6] Despite the parties' previous litigation history in the North Carolina Declaratory Action, Liberty presumably filed this action in Virginia in a preemptive attempt to avoid North Carolina Supreme Court precedent holding that the exhaustion of an insurance policy does not discharge an insurer from its defense obligations prior to settlement or judgment in the underlying case. *See Brown v. Lumbermens Mutual Casualty Company*, 326 N.C. 387, 394 (1990). It should also be noted that the policy language in *Brown* is nearly identical to that found in the Stock Policies.

§ 1332; and 2) Liberty has similarly failed to allege (and cannot demonstrate) personal jurisdiction or venue over either of the KB Defendants, given that neither has any contact with the State of Virginia. In the alternative, the KB Defendants seek to transfer this matter to the United States District Court for the Eastern District of North Carolina or the United States District Court for the Central District of California pursuant to the factors articulated by 28 U.S.C. § 1404.

## LEGAL ARGUMENT

### I.     Liberty's Complaint Fails to Confer Subject Matter Jurisdiction.

A party bringing a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "may attack a complaint on its face, insofar as the complaint fails to allege facts upon which the court can base jurisdiction, or it may attack the truth of any underlying jurisdictional allegations contained in the complaint." *Suntrust Bank v. Village at Fair Oaks Owner, LLC*, 766 F. Supp. 2d 686,689 689 (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). When a party attacks the truth of a jurisdictional assertion, the court may consider evidence outside the pleadings. *Id.* Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."

28 U.S.C. § 1332 provides that district courts shall have subject matter jurisdiction over all matters "where the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between...(1) citizens of different states...". 28 U.S.C. § 1332(a)(2012). The affirmative burden of alleging facts sufficient to establish subject matter jurisdiction under § 1332 lies squarely with Liberty. *Suntrust*, 766 F. Supp. 2d at 688 (citing *Pinkley, Inc. v. City of Frederick, Md.*, 191 F. 3d 394, 399 (4th Cir. 1999)); 15 *Moore's Federal Practice* 102.107[1].

### a. Liberty fails to identify the full citizenship of Stock's members for purposes of diversity jurisdiction.

"In a diversity action, the plaintiff must state all parties' citizenship such that the existence of complete diversity can be confirmed." *Contreras v. Thor Norfolk Hotel, L.L.C.*, 292 F. Supp. 2d 794, 797 (E.D. Va. 2003)(quoting *Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur., Co.*, 177 F.3d 210, 222 n. 13 (3d Cir. 1999)). Moreover, "[i]t is well established that, for purposes of federal jurisdictional diversity of citizenship, an LLC is not a corporation, and thus is not considered a citizen of its state of incorporation and principal place of business, but instead shares the citizenship of its members." *Suntrust*, 766 F. Supp. 2d at 688 (citing *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079-1080 (5th Cir. 2008)); *See also Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004) (finding that a Virginia LLC shared citizenship with its members); *Contreras*, 292 F. Supp. 2d at 798.

The citizenship of each LLC member must therefore be adequately pled to establish complete diversity of the parties, because an individual member may destroy diversity by being a citizen of the same state as another party. 28 U.S.C. § 1332(a). In its complaint, Liberty simply alleges that "Stock is a North Carolina limited liability company", without specifically identifying the citizenship of each of Stock's members for purposes of diversity jurisdiction. (Compl. ¶ 7). Even accepting Liberty's allegation as true, Liberty fails to mention the citizenship of the parties. Therefore, Liberty has facially failed to properly plead complete diversity under § 1332 (a).

### b. Liberty has not satisfied the requisite jurisdictional amount.

For diversity actions, the plaintiff is required to assert the sufficient amount in controversy of $75,000 in order to establish subject matter jurisdiction with this Court. *Tongkook Am., Inc v. Shipton Sportwear Co.*, 14 F.3d 781, 784 (2d Cir. 1994). Liberty simply states in paragraph 11 of

its Complaint that the "amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," yet contradictorily asserts in paragraph 20 that "LMFIC paid the applicable limit of insurance in the payment of judgments and/or settlement." Liberty does not explain how an exhausted insurance policy is sufficient to satisfy the $75,000 threshold amount required by § 1332. As such Liberty has failed to properly plead diversity jurisdiction and the Complaint should be dismissed.

## II.   Dismissal is warranted under Rule 12(b)(2) because this Court does not have personal jurisdiction over either of the KB Defendants.

Personal jurisdiction can be either general or specific. *Chiaphua Components Ltd. v. W. Bend Co.*, 95 F. Supp. 2d 505, 507 (E.D. Va. 2000). "If a defendant's activities within the forum state are substantial and pervasive, the Court may exercise general jurisdiction over the defendant. On the other hand, if the contacts with the forum are rare or limited but relate directly to the cause of action, then the Court's specific jurisdiction can be used to subject a defendant to suit as to that cause of action." *Id.* Liberty bears the burden of proving by a preponderance of evidence that personal jurisdiction exists over each of the KB Defendants. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Chiaphua*, 95 F. Supp. at 507.

When a court evaluates whether specific personal jurisdiction exists as to a defendant, a two-step inquiry is involved. *Hartford Casualty Insurance Co. v. JR Marketing, LLC*, 511 F. Supp. 2d 644, 647 (E.D. Va. 2007). First, the court must consider whether the forum state's long-arm statute permits jurisdiction. *Id.* (citing *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004)). Second, the court must ensure that jurisdiction over the defendant "comports with the Due Process Clause of the Fourteenth Amendment." *Id.* "Because Virginia's long-arm statute[7]

---

[7] The Virginia Long-Arm Statute specifies certain acts that may subject a person to personal Va. Code Ann. § 8.01-328.1. As explained more fully herein, none of these specified acts are remotely applicable to either of the KB Defendants.

extends personal jurisdiction to the extent permitted by the Due Process Clause, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one'." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (quoting *Stover v. O'Connell Assocs.*, 84 F.3d 132, 135-136 (4th Cir. 1996)). Accordingly, this Court only needs to determine whether the exercise of jurisdiction over each of the KB Defendants would offend due process. *Hartford*, 511 F. Supp. 26 at 647-648.

Finally, it is well settled that a district court may consider documents outside the pleadings when jurisdictional questions are raised under Rule 12(b)(2). *Christian Broad. Network, Inc. v. Busch*, CIV.A. 2:05CV558, 2006 WL 51190 (E.D. Va. Jan. 9, 2006) ("Under Rule 12(b)(2), the accepted practice is to consider extra-pleading material rather than accept the allegations of the complaint as true") (citing *Wilson-Cook Medical, Inc. v. Wilson,* 942 F.2d 247, 253 (4th Cir.1991) (accepting, without direct comment, district court's consideration of affidavits in ruling on 12(b)(2) motion to dismiss)); *Baradell v. Bd. of Soc. Servs. Pittsylvania Cnty.*, 970 F. Supp. 489, 492 (W.D. Va. 1997) (examining a motion to dismiss under Rule 12(b)(2) and explaining "Where jurisdictional defenses are asserted, matters outside the pleadings may be considered") (citing *Adams v. Bain,* 697 F.2d 1213 (4th Cir.1982)). The affidavit and documents accompanying this Motion show that Liberty does not, and indeed cannot, establish that this Court has general or specific personal jurisdiction over either KB or KB Raleigh.

### a. There is no basis for general jurisdiction over either KB Defendant in Virginia.

General jurisdiction exists when a defendant has such "'continuous and systematic' contacts with the forum state that it may be haled into court in that forum on any claim." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984). The exercise of general personal jurisdiction remains limited by the requirements of due process. "Subjecting a non-

resident defendant to the binding judgments of the forum court must 'not offend traditional notions of fair play and substantial justice.'" *Chiaphua*, 95 F. Supp. at 509.   Furthermore, "[T]he contacts of the defendant with [Virginia] must be such as to make it reasonable to require a defense in the forum state." *Id.*   According to the Fourth Circuit, "the threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." *ESAB Group Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir.1997).   To determine whether general jurisdiction over KB and KB Raleigh exists, this Court must evaluate both the quantity and nature of their contacts with Virginia. *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 591 (E.D. Va. 1992).

As detailed in the documents accompanying the underlying motion, the KB Defendants have no meaningful contacts with Virginia, much less systematic and continuous ones, which would give rise to general jurisdiction in a Virginia court. The KB Defendants have principal places of business in North Carolina and California, respectively. (Cope Aff. ¶ 4). They are not Virginia companies, do not maintain offices in Virginia, and are not registered with the Virginia Secretary of State. (Cope Aff. ¶ 5). The KB Defendants also received the Stock Policies in North Carolina and California, rather than Virginia. (Cope Aff. ¶ 8). Because the KB Defendants have no systematic and continuous contacts, there is simply no basis for general jurisdiction.

### b.  Similarly, there is no basis for specific personal jurisdiction over either of the KB Defendants.

Specific jurisdiction is much narrower than general jurisdiction and is appropriate only when the dispute itself "arises out of [the defendants'] contacts with the forum state…." *Id.*   To trigger specific jurisdiction, "'it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws.'" *Federal Ins. Co. v. Lake Shore, Inc.,*

886 F.2d 654, 658 (4th Cir.1989) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).In specific jurisdiction cases, "a 'relationship among the defendant, the forum, and the litigation' is the essential foundation," *Le Bleu Corp. v. Standard Capital Grp., Inc.*, 11 F. App'x 377, 379-80 (4th Cir. 2001). Here, there is absolutely no relationship between the KB Defendants, this insurance coverage action, and the State of Virginia.

According to the Fourth Circuit Court of Appeals, for the assertion of specific jurisdiction over a defendant to comply with due process, three criteria must be met: 1) the defendant must have purposefully availed himself of the benefits of the forum, 2) the cause of action must arise from the forum contacts, and 3) the exercise of jurisdiction must be reasonable. *Christian Science Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215-216 (4th Cir. 2001)(citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-416 (1984). Here, Liberty meets none of these requirements.

First, when determining whether a defendant has purposely availed himself of the benefits of a forum, the following factors are considered: 1) engagement in significant or long-term business activities in the state; 2) a contractual agreement between the parties that the law of the forum state will govern; 3) in-person contacts by the defendant with the resident of the forum state regarding the business relationship, 4) the nature, quality, and extent of the communications between the parties regarding the business relationship; and 5) whether the contract was to be performed within the forum. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). KB and KB Raleigh did not purposefully avail themselves of the benefits of the State of Virginia because: 1) as noted in the previous section, the KB Defendants have no significant or long-term business activities in Virginia; 2) the KB Defendants never agreed that Virginia law would apply to their rights as additional insureds

under the Stock Policies; 3) the KB Defendants had no in-person contacts with Liberty, Stock or Ferguson in Virginia regarding the insurance contracts; 4) the KB Defendants had no intention to contract with Ferguson or knowledge that the Stock Policies may have been delivered in Virginia; and 5) the contract(s) to be performed between KB Raleigh and Stock took place in North Carolina, and the Stock Policies were intended to insure interests located within North Carolina.

Second, this suit cannot not arise from KB and KB Raleigh's non-existent contacts with Virginia. *See Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 589 (E.D. Va. 1992) ("In order for a cause of action to arise from business transacted in Virginia . . . , the activities that support the jurisdictional claim must coincide with those that form the basis of the plaintiff's substantive claim."). According to the Fourth Circuit, "[a] contract with a resident of a forum state does *not* automatically constitute sufficient contacts to support the forum's assertion of specific jurisdiction, even where the dispute arises from the contract." *Le Bleu*, 11 F. App'x at 380. "Rather, for purposes of the due process analysis, the *contract* must have a 'substantial connection with the State,' so that the 'quality and nature' of a defendant's relationship to the forum 'can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.'"" *Id.* (holding two visits to North Carolina by the defendant's employees, a payment mailed to North Carolina, and the fact that a contract was signed in North Carolina to be insufficient to establish personal jurisdiction over the defendant).

Liberty bases its declaratory judgment suit upon: 1) the Stock Policies and 2) the Settlement and Defense Agreements. These documents, however, bear no relation to Virginia. *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 530-531 (E.D. Va. 2009) (explaining that the Fourth Circuit has found that Virginia's long-arm statute "does not extend to a contract

formed and performed outside Virginia") (citing *Promotions, Ltd. v. Brooklyn Bridge Centennial Comm.*, 763 F.2d 173, 175 (4th Cir. 1985)). The KB Defendants negotiated insurance coverage with Stock under the Stock Policies outside the State of Virginia, sought coverage for interests located within the State of North Carolina, and received the Stock Policies in North Carolina and California. (Cope Aff. ¶¶ 6-9). Moreover, KB Raleigh negotiated the Settlement and Defense Agreements with Liberty's counsel in Raleigh to resolve a previous declaratory relief action wherein Liberty admitted was properly heard in the Eastern District of North Carolina. (Cope Aff. ¶ 16). Defendants simply had no contacts in Virginia with respect to either the Stock Policies or the Settlement and Defense Agreements, which serve as the basis of Liberty's Complaint.

Finally, Virginia's exercise of jurisdiction over this matter is not reasonable because, as explained above, there is absolutely no relationship between either of the KB Defendants with this forum and this litigation. None of the events giving rise to this litigation involving the KB Defendants as additional insureds occurred in Virginia. Here, there is no affirmative act by either KB or KB Raleigh that can be said to have triggered specific personal jurisdiction in Virginia relating to this dispute -- specific personal jurisdiction simply does not exist.

Because Liberty is unable to show general or specific jurisdiction as to either KB Defendant in Virginia, this action must be dismissed pursuant to Rule 12(b)(2).

### III. Dismissal is also required under Rule 12(b)(3) because venue in Virginia is improper under both 28 U.S.C. § 1406 and 28 U.S.C § 1391.

Liberty also has the affirmative burden to show that venue is proper in this forum. *Polygroup Ltd. v. General Foam Plastics Corp.*, 2012 WL 2554645 (E.D. Va. 2012) (citing *Bartholomew v. Va. Chiropractors Ass'n, Inc.*, 612 F.2d 812, 816 (4th Cir. 1979), *overruled on other grounds, Ratino v. Med. Serv. of D.C.*, 718 F.2d 1260 (4th Cir. 1983)). Liberty cannot

15

satisfy this burden because 1) 28 U.S.C. § 1406 provides that venue is improper and an action is subject to dismissal or transfer when a court (as here) lacks personal jurisdiction over a defendant; and 2) Liberty deliberately brought suit in this district in violation of 28 U.S.C. § 1391, even though it admitted in the prior North Carolina Declaratory Action that the Eastern District of North Carolina was the venue most appropriate for this dispute.

Also, as with Rule 12(b)(2) motions, district courts may consider documents outside the pleadings when considering a motion to dismiss for improper venue under Rule 12(b)(3). *Aggarao v. MOL Ship Management Co.*, Ltd, 675 F.3d 355, 365 (4th Cir. 2012)(citing *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006)); *see also The Hipage Co., Inc. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 611 (E.D. Va. 2008) (when ruling on a 12(b)(3) motion, the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis and the court can therefore consider evidence outside the pleadings.)

> **a. Because this Court does not have personal jurisdiction over either of the KB Defendants, venue here is improper and dismissal is warranted under 28 § U.S.C. 1406.**

28 U.S.C. § 1406 provides, in pertinent part, that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division where it could have been brought." Where a court does not have personal jurisdiction over a defendant (or as here, multiple defendants), venue is improper and dismissal under § 1406 is warranted. *Myelle v. Am. Cyanamid*, 57 F.3d 411, 412 (4th Cir. 1995); *Proctor v. Morrissey*, 45 F.3d 427 (4th Cir. 1995); *Porter v. Groat*, 840 F.3d 255 (4th Cir. 1988). As noted by several courts, "the concepts of venue and personal jurisdiction [have become] essentially coextensive, and therefore, venue can be technically proper when it complies with the applicable venue statute but wrong when there is

some other procedural obstacle in the original court, such as a lack of personal jurisdiction over the defendant." *DAG Jewish Directories, Inc. v. Hebrew English Yellow Pages, Inc.*, CIV.A. 09-33(KSH), 2009 WL 983026, at *6 (D.N.J. Apr. 13, 2009); *see also Lafferty v. St. Riel*, 495 F.3d 72, n.13 (3d Cir. 2007); *Evanko v. WCDI, LLC*, CIV.A. 11-1099, 2012 WL 393261, at *6 n.7 (W.D. Pa. Feb. 6, 2012); *Bennett v. Beggs & Lane, LLP*, CIV.A. 11-01222, 2012 WL 345104, at *4 n.7 (W.D. Pa. Jan. 12, 2012), *report and recommendation adopted by* 2:11CV1222, 2012 WL 345057 (W.D. Pa. Feb. 1, 2012). In those instances, dismissal under § 1406 is proper. As explained in detail in the preceding section, the KB Defendants do not have sufficient contacts with Virginia, and Liberty cannot establish personal jurisdiction. Given that, venue is improper as a matter of law in this district and this action must be dismissed.

### b. Liberty has failed to establish that the Eastern District of Virginia is the proper venue under 28 U.S.C § 1391.

Venue is only proper in three specified instances under 28 U.S.C. § 1391(b).[8] Here, Liberty asserts only two of the instances specified in § 1391 to support venue:

> (b) Venue in general. – A civil action may be brought in –
>
>> (2) a judicial district in which a ***substantial part of the events*** or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or
>> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(2)-(3)(2012) (emphasis supplied).

"[I]n determining whether events or omissions are sufficiently 'substantial' to support venue, a court should 'not focus only on those matters that are in dispute or that directly led to

---

[8] Liberty' stated basis for venue under 28 U.S.C. § 1391(a)(2) and (3) is incorrect. Liberty presumably is referring to (b) of the latest enactment of the statute, effective December 2011. Nevertheless, Liberty has failed to facially plead a sufficient basis for venue in its Complaint.

the action,' but rather 'should review the entire sequence of events underlying the claim."

*Production Group Int'l, Inc. v. Goldman,* 337 F.Supp.2d 788, 798 (E.D.Va.2004) (citing *Mitrano v. Hawes,* 377 F.3d 402, 405 (4th Cir.2004) (internal citations omitted). Here, 28 U.S.C. § 1391(b)(3) is entirely inapplicable because Liberty could have filed this action in the Eastern District of North Carolina, where KB Raleigh and Stock are located, where the alleged defective homes are located, where the Stock Policies were delivered to KB Raleigh, where the Underlying Class Action is currently ongoing in state court, where KB Raleigh and Liberty previously litigated the same issues of insurance coverage under the same Stock Policies for approximately fifteen months, and where the Settlement and Defense Agreements were negotiated and finalized.

With regard to 28 U.S.C. § 1391(b)(2), there is no doubt that the substantial part of the events giving rise to this suit occurred in North Carolina rather than Virginia, yet Liberty instead filed this action in the Eastern District of Virginia based on the unsubstantiated allegation that the Stock Policies were delivered to Ferguson and Stock in Virginia. But this unsubstantiated and conclusory statement is belied by examination of the actual Stock Policies, which list Raleigh, North Carolina addresses for both Ferguson and Stock. (Cope Aff. ¶ 8, Ex. 1 pp. 11-13). Moreover, the Stock Policies were delivered to KB Raleigh in North Carolina. (Cope Aff. ¶ 8). KB Raleigh and Stock have principal places of business in Raleigh, North Carolina, and Liberty has previously *admitted* in court filings that both jurisdiction and venue are proper in the Eastern District of North Carolina. (Cope Aff. ¶¶ 4,6,15). Based on the foregoing and coupled with the established lack of personal jurisdiction over either of the KB Defendants as provided in Section II, *supra,* Liberty's choice of this forum is improper under Rule 12(b)(3) and its Complaint must be dismissed.

**IV.    In the alternative, if this Court determines that dismissal is not warranted under 28 U.S.C. § 1406 and 28 U.S.C. § 1391, transfer to the United States District Court for the Eastern District of North Carolina is required under 28 U.S.C. § 1404(a).**

According to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision of whether to transfer a case is left to the sound discretion of the district court.[9] *One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824, 827 (E.D. Va. 2004). As enumerated by the United States Supreme Court in *Stewart Organization, Inc. v. Ricoh Corporation*, a court, in evaluating whether a case is a candidate for transfer to a more appropriate venue, must make an "individualized, case-by-case consideration of convenience and fairness" and "weigh in the balance a number of case-specific factors." 487 U.S. 22, 29 (1988).

Courts in this district have outlined four general factors that a court should use to guide the decision to transfer a matter under § 1404(a). These factors include:

(1) plaintiff's initial choice of forum;

(2) witness convenience and access;

(3) party convenience; and

(4) the interests of justice.

*JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731 (E.D. Va. 2007)(quoting *Precision Franchising, LLC v. Coombs*, No. 1:06CV1148, 2006 WL 3840334, at *2 (E.D. Va. Dec. 27, 2006)); *see also Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 592 (E.D. Va. 1992) ("Although these

---

[9] *See Chiaphua Components Ltd. v. W. Bend Co.*, 95 F. Supp. 2d 505, 513 (E.D. Va. 2000)(refusing to exercise court's discretion to transfer case to the Eastern District of Wisconsin where plaintiff was well aware of venue in Wisconsin, having engaged the defendant in litigation there, as well as the forum of Hong Kong).

factors are essentially the same as those considered to determine whether to dismiss an action under the common law doctrine of forum non conveniens, § 1404 vests courts with broader discretion 'to grant transfers upon a lesser showing of inconvenience' than is required to obtain dismissal under the doctrine of forum non conveniens.").

### a. Liberty's cause of action bears no relation to Virginia, and, as such, does not impede transfer.

When, as here, a plaintiff's cause of action bears "little or no relation" to the chosen forum – the plaintiff's choice of venue is not entitled to substantial weight. *Verosol*, 806 F. Supp. at 592-93. When the plaintiff is not suing in its home forum and the cause of action is "at best only tenuously related" to the forum, "plaintiff's initial venue choice will not impede transfer if the relevant § 1404(a) factors point to another forum." *Id.*

In addition, when a case that is a candidate for transfer relates to a pending lawsuit in another jurisdiction that arises out of the same transaction or occurrence, courts have favored transfer to that other venue. *See Pike Elec. Corp. v. Graham*, CIVA CV06-0757, 2006 WL 4006130, at *2 (W.D.La. Nov. 14, 2006). In *Pike*, a Louisiana court transferred an action to Texas under a § 1404 analysis and noted: "[i]t is also significant that the related case ... was filed by Pike and is currently pending in the Southern District of Texas. The Texas case and this lawsuit arise out of the same transactions and occurrences and involve the same witnesses and/or parties." *Id.*

Here, the Eastern District of Virginia is not Liberty's home forum and there are no ties between the KB Defendants, the Stock Policies, the Settlement and Defense Agreements, and this forum, entitling Liberty's choice to little weight, if any.[10] The Stock Policies were delivered to the KB Defendants in North Carolina and California, the Underlying Class Action is currently

---

[10] See footnote 2, *supra*.

ongoing in Wake County Business Court in Raleigh, North Carolina, and Liberty and KB Raleigh previously litigated the same issues of insurance coverage under the Stock Policies in the District Court for the Eastern District of North Carolina. (Cope Aff. ¶¶ 4, 8, 10, 14-15). Like *Pike*, this action arises from previous transactions and occurrences in North Carolina involving the same parties, and therefore this factor favors transfer.

### b. Witness Convenience and Access.

"The convenience of the witnesses is of considerable importance in determining whether a transfer of venue is appropriate under Section 1404(a)." *Samsung Electronics Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 718 (E.D. Va. 2005). None of the parties to this action are citizens of Virginia and there appear to be no witnesses located in the State of Virginia based on the face of Liberty's Complaint. According to the affidavit submitted by Travis Cope, the witnesses expected to testify primarily reside in either North Carolina or California. (Cope Aff. ¶ 18). Litigating in North Carolina or California will "substantially reduce" the time and expense that a declaratory judgment proceeding in Virginia would involve. *Verosol*, 806 F. Supp. at 592. Furthermore, transferring the suit to North Carolina will not inconvenience Liberty because traveling from Massachusetts to North Carolina is no more inconvenient than traveling from Massachusetts to Virginia. *See Verosol*, 806 F. Supp. at 593 (quoting *Anchor Sav. Bank v. Transamerica Ins. Co.,* 634 F. Supp. 398, 400–01 (S.D.N.Y.1986) (observing that "[w]here a plaintiff's chosen forum has little or no relation to the material facts of the case so that he may not rely on the deference ordinarily given his choice, he cannot by conclusory recitations of inconvenience defeat a defendant's transfer motion which is supported by a factual showing of greater convenience in the transferee forum.")).

KB Raleigh and Stock are both headquartered in North Carolina, and their witnesses related to this dispute and the Underlying Class Action are primarily located within that state. (Cope Aff. ¶¶ 4-6). In the event Liberty expects its California representative to testify concerning this matter, then the KB Defendants agree that venue would be more appropriate in the Central District of California where KB is located, Regardless, this factor also favors transfer from the Eastern District of Virginia.

### c. *The convenience of the parties.*

No party to this suit is a citizen of Virginia, but both KB Raleigh and Stock have principal places of business located in Raleigh, North Carolina.  (Cope Aff. ¶¶ 4-6). Liberty has both admitted that venue is proper in North Carolina (Cope Aff. ¶15, Exhibit 3) and has litigated for fifteen months in that forum. Therefore, North Carolina, which is the state of the Underlying Class Action (including the 277 homes at issue in the case) and all other related disputes concerning this litigation and the related Stock Policies and Settlement and Defense Agreements (including the North Carolina Declaratory Action), is the most convenient venue for the parties.

### d. *The interests of justice.*

The interest of justice is a catch-all factor intended "to encompass all factors bearing on transfer that are unrelated to convenience of witnesses and parties." *Board of Trustees, Sheet Metal Workers Nat. Fund v. Baylor Heating and Air Conditioning, Inc.*, 702 F. Supp. 1253, 1260 (E.D. Va. 1988). Such factors include "the court's familiarity with the applicable law; docket conditions; access to premises that might have to be viewed; the possibility of an unfair trial; the ability to join other parties; and the possibility of harassment." *Pragmatus AV, LLC v. Facebook, Inc.* 769 F. Supp. 2d 991, 996 (E.D. Va. 2011).

With respect to the factor pertaining to the court's familiarity with the applicable law, North Carolina's legislature has specifically enacted a choice of law statute providing that "[a]ll contracts if insurance on property, lives, and interests in [North Carolina] shall be deemed to made therein." N.C. Gen. Stat. § 58-3-1 (2012). Because the Stock Policies were intended to insure construction supplies and services provided by Stock to KB Raleigh residential projects throughout North Carolina, N.C. Gen. Stat. § 58-3-1 is applicable and North Carolina law governs this dispute. *See Cont. Cas. Co. v. Physicians Weight Loss Centers*, 61 Fed. Appx. 841, 845 (4th Cir. 2003)(close connection with insured interests located in North Carolina sufficient to come within scope of N.C. Gen. Stat. § 58-3-1, even when underlying policy negotiated in another state). Accordingly, a North Carolina court will have a greater familiarity with North Carolina law, and this factor favors transfer.

Also, as described exhaustively herein, Virginia bears no relation to the underlying Class Action and therefore the interests of justice cannot be served by Liberty's forum shopping and bringing this suit in Virginia. The Underlying Class Action and 277 homes that form the basis of this coverage dispute are located in North Carolina, and the parties previously litigated insurance coverage issues in North Carolina federal court regarding these same Stock Policies. (Cope Aff. ¶¶ 10-15). Despite the obvious connection of this case to the State of North Carolina, Liberty brought this suit in Virginia, flippantly alleging delivery of the Stock Policies to Ferguson (a non-party to this action) and Stock as its sole basis to establish both venue and personal jurisdiction. Liberty's transparent attempt to select an unrelated judicial forum in light of unfavorable precedent in North Carolina should not be condoned and is not in the interest of justice.

As with the other factors under § 1404, this factor decidedly favors transfer to North Carolina, or in the alternative, California if this Court so decides.

## CONCLUSION

Based on the foregoing, Liberty has failed to properly plead subject matter jurisdiction, and KB and KB Raleigh have no contacts that give rise to the exercise of personal jurisdiction or venue in the State of Virginia. For that reason, the KB Defendants respectfully request that this Court dismiss this action pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 28 U.S.C. § 1406. In the alternative, and only if this Court determines that dismissal is somehow improper, the KB Defendants respectfully request a transfer of venue under 28 U.S.C. § 1404, as all of the pertinent factors indicate that the District Court for the Eastern District of North Carolina or the District Court for the Central District of California are the forums with the greatest ties to this dispute. The KB Defendants also respectfully request that this Court award the KB Defendants all attorneys' fees and legal expenses incurred by the KB Defendants in this action as provided by the Settlement and Defense Agreements, and for any further relief that this Court deems proper.

Respectfully submitted this the 11th day of July, 2013.

    /s/ Michael S. Koplan
 Michael S. Koplan (VA Bar No. 32893)
**BRADLEY ARANT BOULT CUMMINGS LLP**
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Telephone: (202) 393-7150
Fax: (202) 347-1684
E-mail: mkoplan@babc.com

*Attorneys for Defendants KB HOME and*
*KB HOME Raleigh-Durham Inc.*

24

CERTIFICATE OF SERVICE

I hereby certify that on the 11th of July, 2013, I have served a copy of the foregoing **DEFENDANTS KB HOME AND KB HOME RALEIGH-DURHAM INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER VENUE** upon the Clerk of Court electronically and to the following electronically and via United States Mail:

Joseph F. Giordano
SEMMES, BOWEN & SEMMES
1577 Spring Hill Road
Suite 200
Vienna, Virginia 22182

*Attorneys for Plaintiff Liberty Mutual Fire Insurance Company*

   /s/ Michael S. Koplan
 Michael S. Koplan (VA Bar No. 32893)
**BRADLEY ARANT BOULT CUMMINGS LLP**
1615 L Street, N.W., Suite 1350
Washington, D.C. 20036
Telephone: (202) 393-7150
Fax: (202) 347-1684
E-mail: mkoplan@babc.com